Lawrence E. Henke
David L. Vicevich
Vicevich Law
3738 Harrison Ave.
Butte, Montana 59701
Telephone: (406) 782-1111
Facsimile: (406) 782-4000
larry@vicevichlaw.com
dave@vicevichlaw.com
     *Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, HELENA DIVISION

| | |
|---|---|
| LEPROWSE CONTRACTING, INC. ) <br> a Montana Corporation, and ) <br> PAUL LEPROWSE, individually, ) <br> ) <br>    Plaintiffs, ) <br> ) <br>    vs. ) <br> ) <br> EDWARD BEAUDETTE, individually, ) <br> and KATHLEEN TERRIO, individually, ) <br> ) <br>     Defendants. ) <br> _____ ) | **Cause No. _____** <br><br> **COMPLAINT AND DEMAND** <br> **FOR JURY TRIAL** |

COMES NOW, the Plaintiffs, LeProwse Contracting, Inc., ("Contracting")

and Paul LeProwse ("LeProwse"), by and through their counsel, Lawrence E.

Henke, and for their complaint against Defendants, asserts and alleges as follows:

## I.
## Parties

1.  Plaintiff Paul LeProwse, is a resident of Silver Bow County, Butte, Montana and

at all times relevant was a resident of Silver Bow County.

2.  Plaintiff LeProwse Contracting, Inc., is a Montana corporation whose principal place of business was in Butte, Silver Bow County, Montana, and at all times relevant was a resident of Silver Bow County.

3.  Defendant Edward Beaudette is a resident of Deer Lodge County, Anaconda, Montana and at all times relevant was an employee of the State of Montana, Montana Department of Transportation.  He may be served with process at 18 Little Moose Horn Lane, Anaconda, MT 59711, or wherever found.

4.  Defendant Kathleen Terrio is a resident of  Lewis & Clark County, Helena, Montana and at all times relevant was an employee of the State of Montana, Montana Department of Transportation.  She may be served with process at 6073 Goodwin Drive, Helena, Montana 59602, or wherever found.

## II.
## Venue and Jurisdiction

5.  Venue is proper in Federal District Court, Helena Division, pursuant to 28 U.S.C. § 1391(b)(2).

6.  This Court has personal jurisdiction over the parties to this lawsuit because at least one of Defendants are residents of Lewis & Clark County, Montana and all events made the basis of this suit took place within the Helena Division of the District of Montana.

7.  This Court has subject matter jurisdiction over the Plaintiff's claims alleged in

this Complaint because they involve federal statutes. (Authority: 28 U.S.C. §§ 1331 and 1343).

8. The Court may take pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.
## Summary of the Lawsuit

This is a suit involving unauthorized action taken by government employees and against Paul LeProwse, and his company LeProwse Contracting, Inc., specifically in that Ed Beaudette improperly instituted a vendor suspension of LeProwse's other company, LeProwse Construction, Inc., without statutory authority, but acting under color of authority, and in violation of existing Administrative Rules that he knew did not authorize his actions.

Ed Beaudette and Kathy Terrio, both acting under color of authority, then conspired to falsify a State of Montana database by listing LeProwse Contracting as an "obsolete" business entity, which was false. The action taken was, according to Terrio, to "keep an eye on" Paul LeProwse and his companies. Falsifying government records so that self-empowering government employees can "keep an eye" on a Montana citizen and his companies is an unauthorized use of governmental powers and a violation of policies and rules demanding that state records be accurate and true.

# IV.
# __Factual Background__

9.  LeProwse Contracting, Inc. is a construction company specializing in commercial and residential construction.

10. LeProwse Construction, Inc. is a construction company specializing in commercial and residential concrete construction tradecraft. It primarily serves as a subcontractor to General Contractors on prevailing wage construction projects within Montana and emanating principally from MDT.

11. On or about June 13, 2019, the Montana Department of Transportation posted the following notice of suspension for LeProwse Construction, Inc. ("Construction") which defamed, slandered, and caused Construction business loss:



12. Any temporary suspension requires a probable cause finding by the clear and unambiguous statutory language of M.C.A. § 18-4-241:

> (1) The division has the authority to temporarily suspend a vendor from consideration for further contracts with the state __if the division has probable cause__ to believe that the vendor has engaged in activities that could lead to debarment from contract eligibility. The causes for debarment include the following:

(a) submission of a false affidavit for Montana residency;

(b) vendor is not responsible or responsive as defined in 18-4-301, MCA, and ARM 2.5.201 and 2.5.407;

(c) deliberate failure, without good cause, to perform in accordance with the specifications or within the time limit provided in a contract;

(d) a recent record of failure to perform or of unsatisfactory performance in accordance with the terms of one or more contracts;

(e) failure to comply with the provisions of the Unemployment Insurance Law, Title 39, chapter 51, MCA;

(f) failure to comply with the provisions of the Workers' Compensation Act, Title 39, chapter 71, MCA; or

(g) any other cause that the division determines to be so serious and compelling as to affect responsibility as a state contractor, including debarment by another governmental entity.

13. No probable cause was established by Beaudette/MDT for the suspension and no probable cause finding was provided to Construction prior to suspension under which Construction could exercise its due process rights.

14. No basis existed for the Beaudette/MDT's suspension notice to be placed on the MDT website because Beaudette/MDT had not established, nor provided, probable cause; the posting on the web site of this suspension by Beaudette was a "first time in history" event for MDT.

15. The Montana legislature has defined when and how a state agency may suspend a vendor and prevent its participation in State contracts.  Mont. Code Ann. § 18-4-241.

16.  M.C.A. § 18-4-241 requires:  The authority to remove or suspend must be

exercised in accordance with rules adopted by the department.  M.C.A. § 18-4-241, Authority to Remove or Suspend a Vendor.

17. MDT has stated that the suspension rules it adopted are the Administrative Rules of Montana ("ARM").

18. ARM 18.3.105 defines a very limited authorization for suspension within MDT. The Director (Michael Tooley) can make the decision on his own, or the Director can make the decision upon the **written** recommendation of three defined MDT positions:

> If the administrator, deputy director, or department's legal counsel initially determines that there exists credible evidence that the person has committed a violation set forth above, they shall notify the director in writing of the known information supporting or rebutting such a determination.

19. Director Tooley did not suspend Construction; no written recommendation was given to the Director for the decision to suspend the vendor.

20. MDT put the LeProwse suspension decision squarely on two people:  Kevin Christensen and Ed Beaudette.

> INTERROGATORY NO. 14: Identify the person, and their title, who made the decision to suspend LeProwse Construction.
>
> ANSWER: Legal Counsel Ed Beaudette and Construction Engineer Kevin Christensen.

21. Christensen put the decision squarely on Beaudette:

```
5          Q.     Did you make the decision to put
the
6    posting up and to suspend LeProwse
Construction?
7          A.     No.
8          Q.     Who did?
9          A.     Ed Beaudette.
```

22. Construction filed suit against MDT on June 3, 2020 for, generally, the improper suspension and posting on the MDT web site and the damages flowing therefrom.

23. The posting decision by Beaudette/MDT was described as a "first time in history" decision by MDT; that decision was made by Ed Beaudette:

INTERROGATORY NO. 8: Identify the person by name, title, address, and telephone number who placed the "LeProwse Construction, Inc., is suspended from doing business with the Montana Department of Transportation until further notice" notice on the MDT website.

ANSWER: Jeremy Goettle – MDT Engineering Construction Contracting Bureau Chief in c/o of undersigned counsel.

24. Mr. Goettle, however, was only the mechanic – the decision maker was Ed Beaudette, according the Goettle:

```
12          Q.     Was the direction from Ed Beaudette
13    regarding the suspension of LeProwse given to you
14    orally?
15          A.     Yes, I think so. Id., Pg. 59, lines 12-15.

24          Q. By Mr. Henke) Sure, sure.  Beaudette came
25    to you and told you to post something, correct?
1          A.     Correct.
```

*Id., Pg. 60, line 24 through pg. 61, line 1.*

25. MDT further clarified the actors involved in the suspension decision; Kevin Christensen, MDT COO testified that the suspension decision was completely abdicated to "Ed and Kathy" alone:

```
Q.    All right.  So the sole decision-making
      authority was delegated by you to Ed and Kathy to decide
      how to respond to that question?
A.    Yes.

      Christensen deposition, pg. 117, lines 22-25.
```

26. In the course of the Construction lawsuit, it was discovered that the State of Montana AASHTOWare™ database had false data entered with regard to Contracting, and Construction.

27. The falsification of the State's database system, a record under 45-7-208(1)(a), was brought to light by an e-mail from Chris Ferguson, Office of Civil Rights, to Jean Jagoda and Kathy Terrio dated August 7, 2019, wherein Ferguson said:

```
These are two separate companies.  What is the basis for
suspension?  They have never been in our system before, therefore,
MDT has absolutely no evidence that they have operated in any
manner less than above board.  They deserve to be treated the same
as every other new contractor.  Affiliation with another company is
not basis for blatantly suspending a new contractor.
```

28. Terrio admits the entry about LeProwse Contracting, Inc., is false.

29. In an email from Terrio to Chris Ferguson dated August 7, 2019, Terrio admits they have listed LeProwse Contracting as obsolete to "keep an eye" on LeProwse.

> LeProwse Construction Inc. and LeProwse Contracting Inc. are
> listed as obsolete in the system as a method to keep an eye
> on the situation. They can be un-obsoleted at any time If
> needed.

30. In her deposition Terrio admits the "obsolete" entry for LeProwse Contracting
was false. *Terrio Dep.,* pg. 112, line 12 to pg. 113, line 6.

> Q.   **Was LeProwse Contracting, Inc. an active**
>      **company in August of 2019?**
> A.   I would say yes, but -- if I'm allowed to
>      say that.
>      MR. NYGREN:  You're allowed to say but.
>      Go ahead.
> THE WITNESS:  The designation of obsolete was purely a
> trigger so that if a subcontract came through, someone would
> question why, and then we seek legal counsel to see if there
> was anything that we needed to do in regards to LeProwse
> Contracting, Inc.
>      BY MR. HENKE:
> Q.   **Who marked LeProwse Contracting, Inc.**
>      **as obsolete in the AASHTO system?**
> A.   One of the people in ECCB.  I don't know
>      which one.
>      Q.   **Did you tell someone to mark**
>      **LeProwse Contracting, Inc. as obsolete in**
> **the AASHTO system?**
> A.   Yes.

31. LeProwse and Contracting learned of the falsification during the Terrio
deposition on March 5, 2021.

32. M.C.A. § 45-7-208 defines the criminal offense – a 10 year felony – of altering
an official State record.  M.C.A. § 45-7-208(2).

33. Terrio's admitted conduct violates M.C.A. § 45-7-208, TAMPERING WITH
PUBLIC RECORDS OR INFORMATION, in that:

A. the listing of LeProwse Contracting, Inc., as obsolete was a false entry (§ 45-7-208(a));

B. the listing of LeProwse Construction, Inc., as obsolete was a false entry (§ 45-7-208(a));

C. the AASHTOWare™ is a record, as defined by § 45-7-208(a), according to MDT executives:

```
    Q.   What is your understanding of the system to
which Ms. Terrio is referring?
    A.   It's a vendor system.
    Q.   Is that a database system maintained by MDT?
    A.   it is.
    Q.   Is it a state record?
    A.   I believe it is.
Christensen Deposition, pg. 122, lines 4-11.
```

```
    Q.   All right.  Well, let me ask it this way:  Is

the information inputted into AASHTO a record for MDT?

                        . . .

    Q.   Mike, do you understand what I'm asking?

    A.   I guess I'm in the same spot.  When you say
"record," what are you actually looking for?  Is there
information in there that you consider to be a record?
There is information that is submitted to AASHTOWare.

    Q.   Okay.  Fair point.  Is that information that
comes from the State of Montana a Montana State
record?  Is it data?
                        . . .

    THE WITNESS:  If it is data, yes.
Tooley Deposition, pg. 42, lines 2-21
```

34. The justification given by Terrio for the false entries was stated as: "to keep track of LeProwse", which is an illegal use of AASHTOWare™ as it uses a false entry, known to be false but with the purpose that it be taken as a genuine part of the records of the State (M.C.A. § 45-7-208(b)).

35. The listing of an active company in AASHTOWare™ as "obsolete" when it is active with the Secretary of State causes the entry to "impair the verity of the record" according to MDT executive Kevin Christensen.

> Q.    And listing LeProwse Contracting, Inc.—a valid,
>
> good-standing company—with the secretary of state as
>
> obsolete impairs the veracity of that record, doesn't it?
>
>                         . . .
>
>         Q.    Go ahead and answer.
>         A.    Yes.
>         *Christensen Deposition,* pg. 127, lines 1-8.

36. The listing of LeProwse Contracting, Inc., as obsolete was a false entry that impaired the verity of that State record pertaining to LeProwse Contracting, Inc. (M.C.A. § 45-7-208(c)).

37. Terrio also testified that it was Ed Beaudette who instructed her to make this false entry.

> Q.    And you signed it simply because you were told
>         to sign it?
> A.    Yes.
> Q.    By whom?
> A.    Ed Beaudette.
> *Terrio Deposition,* pg. 77, lines 16-20.

38.  M.C.A. § 45-4-102 defines conspiracy as:

(1) A person commits the offense of conspiracy when, with the purpose that an offense be committed, the person agrees with another to the commission of that offense.

39. According to Terrio, she and Beaudette, at Beaudette's instruction, conspired to falsify the State of Montana database records in an effort to "keep track" of two companies, one of which is not even involved in a single action with MDT (LeProwse Contracting, Inc.), and an individual business owner, Paul LeProwse.

```
        Q.    Okay.  The next paragraph says, "Leslie and I
are keeping an eye on subcontracts that come through to
see if one shows up."  One what?
        A.    A subcontract.
        Q.    For who?
        A.    LeProwse Contracting or Construction.
        Q.    Okay.  What basis did you have for keeping an
eye on LeProwse Contracting, Inc.?

                            . . .

        THE WITNESS:  We were keeping an eye on it based on
the actions that were happening by Department of Labor
and Industry, and also based on LeProwse Construction
being suspended.  We were going to ask legal counsel at
that time if one should come through, if we needed to do
anything, what an action would have to be taken, if any.
        Q.    Who told you to do that?
        A.    There was a verbal discussion with Ed
Beaudette.
```
*Terrio Deposition,* pg. 96, line 13 to pg. 97, line 8.

40. Terrio took the act in furtherance of the agreement to actually enter the false information into the State of Montana database.

41. Beaudette is a public servant who, in his official capacity, knowingly made a

vendor suspension decision that he knew was forbidden by law; he knew that the Construction suspension was not lawful; he knew that he did not have the authority to suspend, and; he knew that any action(s) undertaken as part of the suspension, including but not limited to the MDT web site posting, were unlawful.

42. Terrio is a public servant who, in her official capacity, knowingly made a false entry in the AASHTOWare™ database that she knew was false when made, and intended that the false entry be relied upon by others as part of her "keeping an eye" on a Montana citizen and a company in which he has an ownership interest.

43. Jake Goettle, a public servant, and at Beaudette's instruction, conspired with Beaudette to falsify the State of Montana record, the MDT web site, in an effort to punish Construction and prevent it from engaging in State of Montana contracts in violation of Montana law.

44. Goettle, took the act in furtherance of the agreement to actually post the false information onto the State of Montana MDT web-site.

45. Goettle, at Beaudette's instruction, conspired with Beaudette to sustain the unlawful suspension of LeProwse beyond the statutorily defined six (6) month maximum suspension time period prescribed in ARM 18-3-106(3).

46. Goettle's and Beaudette's actions were intended to prevent Construction from engaging in State of Montana contracts.

47. The extended suspension Beaudette instructed Goettle to maintain, aside from being an illegal suspension, was in violation of Montana law regarding the statutorily defined maximum suspension period.

48. Goettle, took the act in furtherance of the agreement with Beaudette to post the false information onto the State of Montana MDT web-site and leave it there for over fourteen (14) months – eight (8) months longer than authorized by law.

49. According to Terrio, she and Beaudette, at Beaudette's instruction, conspired to falsify the State of Montana database records in an effort to "keep track" of two companies, one of which is not even involved in a single action with MDT -- LeProwse Contracting, Inc., and Paul LeProwse because of his ownership interest in Construction.

50. According to Terrio, Jean Jagoda was part of the implementation of the false entry into the AASHTOWare™ state database.

51. The Beaudette-led conspiracies and overt violations of law constitute wrongful action by Beaudette and Terrio, for which they should be held responsible, and by virtue their conduct has caused LeProwse and Contracting damages.

52. The statutes and administrative rules require Director approval of suspensions; Beaudette and Terrio did not follow them.

53. The statutes and administrative rules require adherence to procedures for an agency to use the suspension tool; Beaudette and Terrio did not follow them.

54. The statutes and administrative rules provide for due process protections permitting a victim of this severe action to appeal; Beaudette and Terrio denied these due process protections by their arbitrary and capricious actions.

55. Lastly, Beaudette and Terrio broke the law in entering LeProwse Construction, Inc. and LeProwse Contracting, Inc. into a State of Montana database as "obsolete" which is false.

## V.
## Claims and Causes of Action

### Count 1
### TORTIOUS INTERFERENCE

56. Plaintiff herein realleges paragraphs 1 through 55 above as though fully set forth herein.

57. Beaudette and Terrio have violated ARM 18.4.241 in making an unlawful suspension decision and extrapolating that decision into illegal oppression directed against Contracting and LeProwse.

58. Beaudette knew the M.C.A. § 18-4-241 statutory pre-requisites for suspension had not been met.

59.  Despite this knowledge, Beaudette instructed Goettle to put a public notice of suspension on the MDT web site.

60. Beaudette has acted with malice in promoting a suspension without the statutory authority under ARM 18.3.105.

61. Beaudette has acted with malice in ordering the posting a suspension in contravention to the statutory requirements of ARM 2.5.402(4).

62. Beaudette's actions were intentional and willful in making the posting and specifically calling out LeProwse on the front page of the MDT website and without an underlying finding of statutory violations.

63. Beaudette's actions were calculated to cause damage to LeProwse and Contracting as the posting is a statement to General Contractors that LeProwse's business were somehow tainted and not capable of being used as a sub-contractor.

64. Beaudette's actions were done with the unlawful purpose of causing damage or loss to LeProwse and/or Contracting without right or justifiable cause.

65. Beaudette's actions have caused loss of business, loss of opportunity to bid contracts, and loss of revenue to Contracting.

66. Beaudette's actions have caused emotional distress, loss of opportunity to bid contracts, and loss of revenue to LeProwse.

67. Terrio knew the AASHTOWare™ database was a state record keeping system and it took an authorized sign-in and password to access it.

68. Despite this knowledge, Terrio instructed Jean Jagoda to put a false designation of "obsolete" in the Construction record – tampering with the veracity of the public record.

69. Despite this knowledge, Terrio instructed Jean Jagoda to put a false designation of "obsolete" in the Contracting record – tampering with the veracity of the public record.

70. Terrio has acted with malice in falsifying a public record without the statutory authority and in violation of M.C.A. § 45-7-208.

71. Terrio has acted with malice in ordering the falsification of a public record of two companies just to "keep an eye" on a business and Montana citizen who have committed no offense or violation.

72. Terrio's actions were intentional and willful in making the false entry and specifically derogating Contracting, and impugning LeProwse as a person who needed an eye kept on him by the government.

73. Terrio's actions were calculated to cause damage to LeProwse and Contracting as the false entry was specifically designed to create an impediment to Contracting and LeProwse getting an opportunity to be used as an MDT sub-contractor.

74. Terrio's actions were done with the unlawful purpose of causing damage or loss to LeProwse and/or Contracting without right or justifiable cause.

75. Terrio's actions have caused loss of business, loss of opportunity to bid contracts, and loss of revenue to Contracting.

76. Terrio's actions have caused emotional distress, loss of opportunity to bid

contracts, and loss of revenue to LeProwse.

## Count 2
### INTERFERENCE WITH BUSINESS RELATIONS – BUSINESS DISPARAGEMENT

77. Plaintiffs re-allege and incorporate by reference paragraphs 1-76 of this document as if fully set forth herein.

78. LeProwse and Contracting have been slandered by Beaudette because no final adjudication of any predicate act for either suspension or debarment of Construction, or Contracting, or LeProwse, had occurred when the public posting of the Construction suspension was made.

79. Beaudette has violated statutes and administrative rules by ordering the listing punitive action on the MDT website, which act is unsupported by the law or the facts, and without following the statutorily required prerequisite actions for imposition of any penalty by MDT.

80. In publicly disparaging LeProwse on the MDT web site, Beaudette has unlawfully disparaged LeProwse with malice and fraud.

81. At least 35 other companies and three individuals are currently ineligible for MDT contracting under M.C.A. § 18-4-241 and Administrative rules.

82. LeProwse's company, which uses his name, is the only company listed on the MDT web site by Beaudette.

83. LeProwse has been slandered by Beaudette because no final adjudication of any predicate act for debarment nor suspension had occurred.

84. Beaudette's publication has caused LeProwse emotional distress, special damages, and loss of business.

**Count 3**
**NEGLIGENCE – BEAUDETTE SUSPENSION DECISION**

85. Plaintiffs herein reallege paragraphs 1 through 84 above as though fully set forth herein.

86. Every state employee owes a common law duty to exercise due care in the performance of their statutory duties.

87. A public servant commits official misconduct when in an official capacity the public servant knowingly performs an act in an official capacity that the public servant knows is forbidden by law.

88. Beaudette breached that duty when he knowingly made, and communicated within MDT, an unlawful suspension decision as to Construction.

89. Beaudette's breach has caused damage and injury to Plaintiff Paul LeProwse.

**Count 4**
**NEGLIGENCE – BEAUDETTE POSTING**

90. Plaintiffs herein reallege paragraphs 1 through 89 above as though fully set forth herein.

91. Every state employee owes a common law duty to exercise due care in the performance of their statutory duties.

92. A public servant commits official misconduct when in an official capacity the

public servant knowingly performs an act in an official capacity that the public servant knows is forbidden by law.

93. Beaudette breached that duty when he knowingly conspired with Goettle to post an unlawful suspension on the MDT web site.

94. Beaudette's breach has caused damage and injury to Plaintiffs.

## Count 5
### CONSPIRACY – BEAUDETTE AND TERRIO

95. Plaintiffs herein reallege paragraphs 1 through 94 above as though fully set forth herein.

96. Beaudette and Terrio, acting together and with a meeting of the minds, have violated ARM 24.17.901 by causing MDT to post what is characterized as a notice of suspension without following its own notice provisions.

97. Beaudette is a public servant who, in his official capacity, in furtherance of the agreement knowingly made a vendor suspension decision that he knew was forbidden by law; he knew that the Construction suspension was not lawful; he knew that he did not have the authority to suspend, and; he knew that any action(s) undertaken as part of the suspension, including but not limited to the MDT web site posting, were unlawful.

98. Terrio, took the act in furtherance of the agreement to actually enter the false information into the State of Montana database.

99. LeProwse's company was suspended without due process, or the proper statutory

notice.

100. Beaudette's and Terrio's actions were intentional and willful in making the posting and specifically calling out LeProwse on the front page of the MDT website and without an underlying finding of statutory violations.

101. Beaudette's and Terrio's actions were calculated to cause damage to LeProwse, and his companies, as the posting is a statement to General Contractors that LeProwse cannot be used as a sub-contractor.

102. Beaudette's and Terrio's actions were done with the unlawful purpose of causing damage or loss to LeProwse without right or justifiable cause.

103. Beaudette's and Terrio's actions have, in fact, caused loss of business, loss of opportunity to bid contracts, and loss of revenue.

## Count 6
### FALSIFICATION OF RECORDS - TERRIO

104. Plaintiff herein realleges paragraphs 1 through 103 above as though fully set forth herein.

105. Terrio is a public employee; she is employed by MDT.

106. By virtue of her position, Terrio had access to the State of Montana's secure database system known as AASHTOWare™.

107. Terrio, using her secured access and password to AASHTOWare™ caused to be entered the false designation "obsolete" into the records pertaining to Construction; this designation was false.

108. Terrio, using her secured access and password to AASHTOWare™ caused to be entered the false designation "obsolete" into the records pertaining to Contracting; this designation was false.

109. By knowingly making a false entry into a record, document, or thing belonging to or received, issued, or kept by the government for information or record, Terrio committed Tampering with public records or information.

110. Terrio's actions were intentional and willful in making the false entries for not better purpose than "keeping an eye" on a Montana citizen.

111. Terrio's actions were calculated to cause damage to LeProwse, and his companies, as the false entries were, in fact, an impediment to Contracting obtaining contract approval status with MDT as a sub-contractor.

112. Terrio's actions were done with the unlawful purpose of causing damage or loss to LeProwse without right or justifiable cause.

113. Terrio's actions have caused loss of business, loss of opportunity to bid contracts, and loss of revenue.

## Count 7
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

114. Plaintiff herein realleges paragraphs 1 through 113 above as though fully set forth herein.

115. Beaudette and Terrio intentionally inflicted emotional distress on LeProwse by, including but not limited to:

    a.    initiating the unlawful suspension of Construction,

    b.    initiating the public posting of LeProwse's business,

    c.    continuing the unlawful suspension beyond the maximum 6-month time frame;

    d.    continuing the public posting of the unlawful suspension beyond the 6-month maximum time frame,

    e.    conspiring to falsify state records, and

    f.    actually falsifying state records.

116. The actions and activities engaged in by Beaudette and Terrio were intentionally driven by animus and Beaudette and Terrio's desire to inflict serious and severe worry, stress and mental anguish upon LeProwse.

117. Beaudette and Terrio's actions were egregious; it was foreseeable that this egregious conduct would lead to unbearable stresses on the owners of LeProwse's companies, including Jason LeProwse.  Jason – Paul's brother – died at the age of 47 after Beaudette and Terrio's conduct inflicted the predictable business harm.  He died under circumstances involving alcohol and prescription pills, as he dealt with the Beaudette and Terrio caused consequences inflicted onto the LeProwse businesses.

118. Beaudette and Terrio's actions did inflict serious and severe emotional distress upon Paul LeProwse, who was forced to, among other things, seek medical

assistance to deal with the stress and anxiety caused by Beaudette and Terrio's actions, including the death of his brother.

119. LeProwse's serious or severe emotional distress was the reasonably foreseeable consequence of the defendants' intentional acts and was, in fact, their desired outcome.

## Count 8
### ALTERNATIVELY, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

120. Plaintiff herein realleges paragraphs 1 through 119 above as though fully set forth herein.

121. As an alternative to intentional infliction of emotional distress, LeProwse alleges that Beaudette and Terrio were negligent, and that negligence has cause LeProwse emotional distress.

122. Beaudette and Terrio negligently inflicted emotional distress on LeProwse by, including but not limited to:

    a.  initiating the unlawful suspension of Construction,

    b.  initiating the public posting of LeProwse's business,

    c.  continuing the unlawful suspension beyond the maximum 6-month time frame;

    d.  continuing the public posting of the unlawful suspension beyond the 6-month maximum time frame,

    e.  conspiring to falsify state records, and

f.   actually falsifying state records.

123. The actions and activities engaged in by Beaudette and Terrio were intentionally driven by animus and Beaudette and Terrio's desire to inflict serious and severe worry, stress and mental anguish upon LeProwse.

124. Beaudette and Terrio's actions were egregious; it was foreseeable that this egregious conduct would lead to unbearable stresses on the owners of LeProwse's companies, including Jason LeProwse.  Jason – Paul's brother – died at the age of 47 after Beaudette and Terrio's conduct inflicted the predictable business harm.  He died under circumstances involving alcohol and prescription pills as he dealt with the Beaudette and Terrio caused consequences inflicted onto the LeProwse businesses.

125. Beaudette and Terrio's actions did inflict serious and severe emotional distress upon Paul LeProwse, who was forced to, among other things, seek medical assistance to deal with the stress and anxiety caused by Beaudette and Terrio's actions, including the death of his brother.

126. LeProwse's serious or severe emotional distress was the reasonably foreseeable consequence of the defendants' intentional acts and was, in fact, their desired outcome.

## Count 9
### VIOLATION OF 42 U.S.C. § 1983 - LEPROWSE

127. Plaintiff herein realleges paragraphs 1 through 126 above as though fully set

forth herein.

128. At all times pertinent to this incident, Defendants Beaudette and Terrio acted under color of authority as enforcement officials for MDT.

129. Defendants, while acting under color of authority, deprived LeProwse of his civil rights under the Fourth Amendment which provides constitutional protection from deprivation of life, liberty, or property, without due process of law, or the denial of equal protections under the law or governmental action.

130. The acts and omissions of Defendants, while carried out under color of authority, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power; the conduct shocks the conscience; the conduct is fundamentally unfair, arbitrary and oppressive; and, it was unrelated to activities which government officials may appropriately and legally undertake in the course of protecting persons or property or ensuring civil order.

131. The acts and omissions of Defendants were taken consciously and with disregard of the various alternatives, such as, but not limited to, following the statutes, following the administrative rules of Montana, following the due process protections for suspension under regulation, and involving the Director of the Department of Transportation in the decision as required by law.

132. Each act or omission of Defendants violated Mr. LeProwse's civil rights under the Fourteenth Amendment of the U.S. Constitution.

133. Each act or omission of Defendants proximately caused or contributed to LeProwse's constitutional rights deprivation, her injuries, and her damages.

**Count 10**
**VIOLATION OF STATE CONSTITUTIONAL RIGHTS - LEPROWSE**

134. Plaintiff realleges paragraphs 1-133 as though fully set forth herein.

135. At all times pertinent to this incident, Defendants acted under color of authority as enforcement officials for MDT, State of Montana.

136. Defendants, while acting under color of authority, deprived LeProwse of his civil rights under the Montana Constitution, Article II, Sections 4, 11, and 17 which provide constitutional protection from deprivation of life, liberty, or property, without due process of law, or the denial of equal protections under the law or governmental action.

137. The acts and omissions of Defendants were taken consciously and with disregard of the various alternatives, such as, but not limited to, following the statutes, following the administrative rules of Montana, following the due process protections for suspension under regulation, and involving the Director of the Department of Transportation in the decision as required by law.

138. Each act or omission of Defendants violated LeProwse's civil rights under the Montana Constitution, Article II, Sections 4, 11, and 17.

139. Each act or omission of Defendants proximately caused or contributed to LeProwse's constitutional rights deprivation, his injuries, and his damages.

## Count 11
### VIOLATION OF 42 U.S.C. § 1983 - CONTRACTING

140. Plaintiff herein realleges paragraphs 1 through 139 above as though fully set forth herein.

141. At all times pertinent to this incident, Defendants Beaudette and Terrio acted under color of authority as enforcement officials for MDT.

142. Defendants, while acting under color of authority, deprived Contracting of its civil rights under the Fourth Amendment which provides constitutional protection from deprivation of life, liberty, or property, without due process of law, or the denial of equal protections under the law or governmental action.

143. The acts and omissions of Defendants, while carried out under color of authority, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power; the conduct shocks the conscience; the conduct is fundamentally unfair, arbitrary and oppressive; and, it was unrelated to activities which government officials may appropriately and legally undertake in the course of protecting persons or property or ensuring civil order.

144. The acts and omissions of Defendants were taken consciously and with disregard of the various alternatives, such as, but not limited to, following the statutes, following the administrative rules of Montana, following the due process protections for suspension under regulation, and involving the Director of the Department of Transportation in the decision as required by law.

145. Each act or omission of Defendants violated Contracting's civil rights under the Fourteenth Amendment of the U.S. Constitution.

146. Each act or omission of Defendants proximately caused or contributed to Contracting's constitutional rights deprivation, her injuries, and her damages.

### Count 12
### VIOLATION OF STATE CONSTITUTIONAL RIGHTS - CONTRACTING

147. Plaintiff realleges paragraphs 1-146 as though fully set forth herein.

148. At all times pertinent to this incident, Defendants acted under color of authority as enforcement officials for MDT, State of Montana.

149. Defendants, while acting under color of authority, deprived Contracting of its civil rights under the Montana Constitution, Article II, Sections 4, 11, and 17 which provide constitutional protection from deprivation of life, liberty, or property, without due process of law, or the denial of equal protections under the law or governmental action.

150. The acts and omissions of Defendants were taken consciously and with disregard of the various alternatives, such as, but not limited to, following the statutes, following the administrative rules of Montana, following the due process protections for suspension under regulation, and involving the Director of the Department of Transportation in the decision as required by law.

151. Each act or omission of Defendants violated Contracting's civil rights under the Montana Constitution, Article II, Sections 4, 11, and 17.

152. Each act or omission of Defendants proximately caused or contributed to Contracting's constitutional rights deprivation, his injuries, and his damages.

## VI.
## Exemplary Damages

153. Plaintiff herein realleges paragraphs 1 through 152 above as though fully set forth herein.

154. Defendants have acted with actual malice and/or actual fraud in initiating a purported suspension action without meeting the statutory prerequisites with malice and fraud entitling the Plaintiffs to punitive damages under M.C.A. § 27-1-220.

155. Defendants have acted with actual malice and/or actual fraud in initiating the never before done public notice of suspension action without meeting the statutory prerequisites with malice and fraud entitling the Plaintiff to punitive damages under M.C.A. § 27-1-220.

156. Defendants have acted with actual malice and/or actual fraud in conspiring to make the false entry into the AASHTOWare™ State of Montana database.

157. Defendant Terrio acted with actual malice and fraud by causing to be entered the false "obsolete" designation in the AASHTOWare™ State of Montana database, entitling the Plaintiff to punitive damages under M.C.A. § 27-1-220.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For those economic damages arising from the Defendants' tortious conduct.

2. For those special damages arising from the Defendants' tortious conduct.

3. An award of special damages against each Defendant for the emotional distress suffered by Paul LeProwse, in an amount to be proven at trial.

4. For punitive/exemplary damages.

5. An award of pre-judgment interest.

6. An award of post-judgment interest.

7. For the costs including attorney's fees allowed by law.

8. For any other relief the Court deems just under the circumstances.

RESPECTFULLY SUBMITTED this 9th day of June, 2021.

*/s/ Lawrence E. Henke*
LAWRENCE E. HENKE
Attorney for Plaintiff


## DEMAND FOR JURY TRIAL

Comes now the Plaintiff, by and through her counsel, and hereby demands a jury trial.

Dated this 9th day of June, 2021.

*/s/ Lawrence E. Henke*
Lawrence E. Henke
Attorney for the Plaintiff